THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CITY OF SEATTLE,<br><br>Plaintiff,<br><br>v.<br><br>ZYLAB NORTH AMERICA, LLC,<br><br>Defendant. | CASE NO. C17-0790-JCC<br><br>ORDER |

This matter comes before the Court on Plaintiff's motion to compel discovery (Dkt. No. 27). Having thoroughly considered the parties' briefing and the relevant record, the Court hereby GRANTS the motion in part and DENIES the motion in part for the reasons explained herein.

## I. BACKGROUND

In 2014, Plaintiff City of Seattle ("City") entered into a contract with Defendant ZyLAB North America LLC ("ZyLAB") under which ZyLAB would provide City with various software services such as an email archiving and eDiscovery system. (Dkt. No. 1-1 at 4.) In March 2016, City terminated the contract because it believed ZyLAB had not provided a system that met the contract's specifications. (*Id.* at 4–5.) The parties began to negotiate the dispute and discussed entering pre-litigation mediation. (*Id.* at 6.)

ZyLAB made a public records request to obtain documents related to the contract and City began to provide the documents. (*Id.*) City requested ZyLAB produce documents it believed

it was entitled to under the terms of the contract. (Dkt. No. 27 at 2.) ZyLAB refused to send City the documents and instead offered that City could come to its Virginia headquarters to take pictures of the documents on a dedicated computer. (*Id*. at 3.) City viewed ZyLAB's proposed method of document production as another breach of the contract. (Dkt. No. 1-1 at 6–7.)

On May 5, 2017, City brought this lawsuit against ZyLAB alleging breach of contract, negligent misrepresentation and violation of the Washington Consumer Protection Act. (Dkt. No. 1-1 at 8–12.)[1] ZyLAB counterclaimed for breach of contract. (Dkt. No. 13 at 9.) On June 30, 2017, City made a request for production on ZyLAB seeking documents it hoped to use during a voluntary mediation. (Dkt. No. 18 at 5.) On July 31, 2017, ZyLAB responded to City's discovery requests with objections and refused to produce any of the requested documents. (Dkt. Nos. 27 at 4, 29-1 at 28–39.) Having not received discovery, City sought, and the Court granted, an extension to the mediation deadline. (Dkt. No. 31.)

On August 31, 2017, City filed its motion to compel (Dkt. No. 27). The Court subsequently ordered the parties to meet and confer in an attempt to resolve the outstanding discovery disputes. (Dkt. No. 38). On September 28, 2017, ZyLAB filed its own motion to compel discovery. (Dkt. No. 39).[2] Parties filed a joint status report on September 29, 2017, outlining the remaining disputes. (Dkt. No. 41). To date, City has provided ZyLAB with thousands of documents regarding the contract dispute. (Dkt. No. 27 at 3.) As far as the Court is aware, ZyLAB has not produced any documents requested by City. (*Id.* at 4.)

## II. DISCUSSION

Discovery motions are strongly disfavored. The Court ordered the parties to meet and confer before ruling on City's motion in an effort to bring about resolution short of having to intervene. (Dkt. No. 38.) Since that order, ZyLAB has filed its own motion to compel. (Dkt. No.

---

[1] ZyLAB removed the case to this Court on May 22, 2017. (Dkt. No. 1.)

[2] This order only deals with City's motion to compel. ZyLAB's motion does not note for consideration until October 13, 2017.

39.) It is clear from the history of this case—both before and since City filed suit—that the parties have fought bitterly over the production of documents. (*See generally*, Dkt. Nos. 18, 27, 39.) The Court observes that the efforts that have gone into litigating the production of documents would have been more productively used to resolve what both parties believe is a straightforward dispute amenable to mediation. (*See* Dkt. No. 18 at 2) ("[The] City proposed that the parties enter mediation without the production of documents, which would be the most expedient and cost-effective approach."); (*see* Dkt. No. 21 at 3) (ZyLAB's counsel stated that "this case cried out for mediation because the case was a simple breach of contract case . . . .").

### A. Motion to Compel Standard

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Relevant information under Rule 26(b) is "information reasonably calculated to lead to the discovery of admissible evidence." *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005). District courts have broad discretion to determine relevancy for the purpose of granting or denying discovery. *See Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002).

When addressing proportionality, the Court considers "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). If requested discovery is not answered, the requesting party may move for an order compelling such discovery. Fed. R. Civ. P. 37(a)(1). The party that resists discovery has the burden to show why the request should be denied. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).

### B. City's Motion to Compel

The Court ordered the parties to file a joint status report listing the remaining issues to be resolved. (Dkt. No. 38.) Having considered the parties' joint status report, and other briefing, the

Court makes the following ruling on the four unresolved areas of dispute:

### 1. The Applicable Time Period of Discoverable Documents.

City asks the Court to order ZyLAB to produce all responsive and nonprivileged documents from the period March 4, 2016 to May 5, 2017. (Dkt. No. 41 at 2–3.) ZyLAB asserts that it obtained counsel on March 4, 2016 and responsive documents after that date are protected by attorney client privilege and work product privilege. (*Id*. at 4.) In addition, ZyLAB states it would be unduly burdensome for it to produce nonprivileged documents from that period. (*Id*.)

"A party withholding materials under an assertion of privilege has the burden of proving that the withheld materials are actually privileged." *Cedar Grove Composting, Inc. v. Ironshore Specialty Ins. Co.*, No. C14-1443-RAJ, slip op. at 5 (W.D. Wash. Dec. 23, 2015) (citation omitted). For documents to fall under the work product privilege they must be both prepared in anticipation of litigation and prepared by or for another party or by or for that other party's representative. *United States v. Richey*, 632 F.3d 559, 567 (9th Cir. 2011) (quoting *In re Grand Jury Subpoena*, 357 F.3d 900, at 907 (9th Cir. 2004)).

ZyLAB has not met its burden to show that all responsive documents between March 4, 2016 and May 5, 2017 are privileged. The only offer of proof that ZyLAB has made to support its privilege argument, is that it retained counsel on March 4, 2016. (Dkt. Nos. 32 at 7, 41 at 4.) In fact, ZyLAB admits that there are documents during that period that are likely not privileged. (Dkt. No. 42 at 11–12) ("[T]here are about 2,000 documents that may not be either work-product protected or attorney/client privilege, I haven't had an opportunity to review those . . . .").

ZyLAB supplements its blanket privilege argument by stating that it is "burdensome and not proportional to require ZyLAB to review those documents." (Dkt. No. 41 at 4.) ZyLAB also argues that the request is not proportional because damages under the contract are capped at $1.2 million and it has already incurred $100,000 in attorney fees. (Dkt. No. 32 at 7.)

Although ZyLAB obtained counsel in March 2016, City did not file its lawsuit until May 2017. (*See* Dkt. No. 41 at 2–4.) From March 2016 to the time City filed suit, the parties tried to

informally resolve their dispute. (Dkt. No. 32 at 2–4.) City has shown some evidence that after March 2016, ZyLAB continued efforts to perform its obligations under the contract. (*See* Dkt. No. 28-1 at 33–6) (April 6, 2016, letter from ZyLAB Vice President to City describing remedial actions under contract.) Responsive documents during that period could therefore be relevant to City's initial breach of contract claim. In addition, City's second breach of contract claim arises out of ZyLAB's conduct during 2016 in which it refused to provide documents in the format requested by City. (Dkt. No. 41 at 3.) City believes ZyLAB breached provisions of the contract based on its refusal to send certain documents to City for review. (Dkt. No. 27 at 4–5.) Responsive documents from that period are therefore reasonably calculated to lead to relevant evidence of City's claim for breach of contract.

The Court does not find that ZyLAB has met its burden to demonstrate that production of nonprivileged, responsive documents during this period would be disproportionately burdensome. ZyLAB has access to responsive documents and has not articulated how or why it would be especially burdensome to produce them. Although ZyLAB's counsel states the cost of its attorney fees to date, it does not quantify or attempt to quantify how much it would cost to review documents from this period to root out those that are truly privileged. (Dkt. No. 41 at 4.)

For those reasons, the Court ORDERS ZyLAB to produce responsive, nonprivileged documents from the period March 4, 2016 to May 5, 2017 when responding to City's requests for production. Any claims of privilege must be specifically documented in accordance with Federal Rule of Civil Procedure 26(b)(5). ZyLAB SHALL produce the documents within 21 days from the issuance of this order.

### 2. The 50,000 Audit Documents (Request for Production Number 18).

City seeks over 50,000 documents that were purportedly compiled in 2016 by ZyLAB in response to an audit request made by City under the terms of the contract. (Dkt. Nos. 27 at 5, 29-1 at 37, 41 at 4.) ZyLAB refuses to produce the documents because it does not believe they are relevant to City's breach of contract claim, and even if they are, producing them would be

disproportionately burdensome. (Dkt. Nos. 32 at 11, 41 at 5–6.)

City's Request for Production Number 18 states: "Please produce the documents referred to in the following excerpt from the November 14, 2016 letter from Pieter R. Varkevisser to Nancy Locke:

> ZyLAB has no obligation to print the documents. They are available now and will remain so on a rolling basis, from a dedicated computer terminal. At last count, there are over 50,000 documents. They will continue to be added to on a rolling basis, something that the City acknowledged would take time, and have long been ready for the City to commence its review.

(Dkt. No. 29-1 at 37.) One of City's breach of contract claims is based on ZyLAB's refusal to provide the referenced audit documents. (Dkt. Nos. 27 at 8, 41 at 5.) The crux of that claim is whether ZyLAB's offer to have City review the documents in person was a breach of the contract, or whether ZyLAB was required to produce the documents in another format—say, by electronic transfer. (*See* Dkt. Nos. 27 at 8, 41 at 4.)

ZyLAB argues that City requests the 50,000 audit documents not as a means to obtain relevant evidence of whether ZyLAB breached the audit provision, but to obtain the documents in a format they sought in the first place. (Dkt. No. 32 at 11) ("What the City is seeking is the remedy for its Fourth Cause of Action for breach of the audit provision . . . .") ZyLAB also asserts that some of the referenced 50,000 documents are duplicative of City's other requests for production. (Dkt. No. 41-1 at 38.) ("Well, those documents lie, in large part, in response to 1 through 16 . . . .") Finally, ZyLAB asserts that identification and review of the 50,000 documents would require "hundreds, if not thousands, of hours of attorney time." (Dkt. No. 42 at 38.)

While production of the 50,000 documents could lead to admissible evidence that would bear on City's breach of contract claim, the relevance of the documents would be limited. City argues that ZyLAB breached a provision of the contract based on the method in which it offered to produce the audit documents. (Dkt. No. 27 at 8.) Given the nature of the breach—improper production—the Court wonders what possession of the actual documents provides to the City's case? Put another way, the substance of the documents seems to have little relevance to whether

ZyLAB acted unlawfully in how it offered to produce them.

City asserts that the applicable contract provision "is breached if ZyLAB did not truly collect documents responsive to the City's 2016 audit request, or if the documents it collected were unresponsive," but does not explain why that is the case. (Dkt. Nos. 27 at 8, 41 at 4.) The Court weighs the limited relevance of the 50,000 documents against ZyLAB's burden in producing them. (*See generally* Dkt. No. 41-1.) ZyLAB has represented that some of the documents will be produced as part of other requests for production. (Dkt. No. 41-1 at 38.) It has cited to the substantial costs it would incur by having to collect and review these documents. (Dkt. No. 42 at 38.) Finally, City has not specified an amount of damages that relate to this particular breach of contract claim, which would help the Court in weighing ZyLAB's burden of production. (Dkt. No. 41 at 4–6.)

The Court will not compel ZyLAB to respond to City's Request for Production Number 18 because it finds that any relevance those documents possess are outweighed by the burden placed on ZyLAB to produce them. Therefore, City's request that the Court compel ZyLAB to respond to Request for Production Number 18 is DENIED. The Court's decision on this request for production does not affect ZyLAB's responsibility to produce responsive documents related to City's other requests for production.

### 3. Documents Involving ImmixTechnology and Sound Transit.

City asks the Court to compel ZyLAB to produce documents related to its past contractual relationships with immixTechnology, Inc. ("Immix") and the Central Puget Sound Regional Transit Authority ("Sound Transit") (Dkt. Nos. 27 at 5, 29-1 at 36–38) (Requests for Production 14–17, 19). ZyLAB raises various objections, but primarily argues that the documents are not relevant to City's claims. (Dkt. No. 41 at 7.)

City asserts that the documents are relevant to its negligent misrepresentation and Consumer Protection Act claims. (Dkt. Nos. 27 at 7, 41 at 7.) As part of its request for proposals for the contract, the City asked ZyLAB if it previously had similar contracts or services

terminated, to which ZyLAB answered "no." (Dkt Nos. 1-1 at 8, 41 at 7.) City asserts that ZyLAB had previously been a subcontractor for a similar project that was terminated between Immix and Sound Transit, as well as being a party to a licensing agreement with Sound Transit. (Dkt. No. 41 at 7.) Thus, City argues that ZyLAB's failure to disclose these past relationships prior to entering its contract with City could give rise to liability. (Dkt. No. 27 at 6–7.)

ZyLAB argues that documents between it and Immix are not relevant to this lawsuit because in the agreement referenced by City ZyLAB was never in privity of contract with Sound Transit. (Dkt. Nos. 41 at 7, 41-2 at 7) (Referencing the licensing agreement which states "immixTechnology is the only entity in privity of contract with Sound Transit."). ZyLAB does not argue that production of the documents would be disproportionately burdensome.

The Court does not agree with ZyLAB's narrow view of relevance regarding this discovery. Requests for production only have to be "reasonably calculated to lead to the discovery of admissible evidence." *Surfvivor Media, Inc.*, 406 F.3d at 635. City's requests for documents regarding ZyLAB's past agreements and relationships with Immix and Sound Transit meet that rubric. Investigation of these documents could provide evidence that ZyLAB, based on its past involvement with Immix and Sound Transit, was not completely forthcoming with the City before it entered into the contract. To cite one example, a ZyLAB Vice President wrote a letter to City in April 2016 discussing "The Failure of ZyLAB to Disclose Contract Termination within Previous Five Years," and ostensibly admitted that the failure to disclose the "Puget Sound contract" was an "embarrassing oversight." (Dkt. No. 28-1 at 54–55.)[3]

ZyLAB cannot heighten the relevance standard by characterizing City's claims in a way that make its requests for production less relevant. (Dkt. No. 41 at 7.) City is correct that ZyLAB's arguments are framed more like a Rule 12(b)(6) motion to dismiss, attacking the

---

[3] ZyLAB points out that this letter was later supplemented to clarify that it was not a party to the contract with Sound Transit; however, that correction doesn't change the fact that this topic could lead to relevant evidence and is therefore ripe for discovery. (*See* Dkt. No. 32 at 10.)

sufficiency of the claims, rather than a motion to challenge the production of documents. (*Id*. at 6–7.) That said, the Court agrees with ZyLAB that such documents are only relevant before March 1, 2014, which is the date ZyLAB provided its response to City's request for proposal and allegedly failed to disclose information regarding past contracts. (*Id*. at 8.) Documents after that date are not reasonably calculated to lead to relevant evidence that ZyLAB failed to disclose information about prior contracts and projects that were terminated.

Therefore, the Court ORDERS that ZyLAB produce all responsive documents prior to March 1, 2014 in response to City's Requests for Production Numbers 14, 15, 16, and 17. ZyLAB SHALL produce the documents within 21 days from the issuance of this order.

ZyLAB separately objects to City's Request for Production Number 19 on the ground that the information is shielded by both attorney client privilege and work product privilege. (Dkt. No. 71 at 8.) City requests all documents "related to the December 2010 settlement agreement between Sound Transit, ZyLAB and immixTechnology." (Dkt. No. 29-1 at 38.) ZyLAB has made a general objection on the basis of privilege and not specified what responsive documents would be covered by the privilege. (*Id*; Dkt. No. 41 at 8.) Under Federal Rule of Civil Procedure 26(b)(5), when a party withholds discovery based on an assertion of privilege it must "describe the nature of the documents, communications, or tangible things not produced or disclosed . . . ." Fed. R. Civ. P. 26(b)(5)(A)(ii). ZyLAB has not provided a privilege log or stated which responsive documents are subject to privilege. (Dkt. No. 29-1 at 38.) ZyLAB is therefore ORDERED to produce all responsive documents to Request for Production Number 19 and make specific objections as to those documents which are privileged.

### 4. Documents in the Possession of ZyLAB BV.

City asks the Court to compel ZyLAB to produce documents related to the contract that are in the possession of its parent corporation ZyLAB BV.[4] (Dkt. No. 41 at 8–9.) ZyLAB argues

---

[4] ZyLAB North America is a limited liability corporation whose corporate parent is ZyLAB BV, an entity based in the Netherlands. (Dkt. No. 32 at 11.)

that it does not have legal control over documents in the possession of ZyLAB BV, nor can it force its corporate parent to provide responsive documents. (Dkt. No. 41 at 9–10.) The question for the Court is whether ZyLAB has possession, custody or control over documents held by its parent corporation. *See* Fed. R. Civ. P. 34 (requests for production deal with things in "the responding party's possession, custody, or control . . . .").

Under Federal Rule of Civil Procedure 34, "control" is defined as the legal right to obtain documents upon demand. *United States v. Int'l Union of Petroleum & Indus. Workers, AFL-CIO*, 870 F.2d 1450, 1452 (9th Cir. 1989) (citation omitted). The Ninth Circuit is clear that a "party's practical ability to obtain the requested documents" is not determinative of whether the party has control over the documents. *In re Citric Acid Litig.*, 191 F.3d 1090, 1107 (9th Cir. 1999) (specifically rejecting the "practical-ability-to-obtain-documents" test adopted by other circuits). The party seeking production of documents bears the burden of proving the opposing party controls the documents. *Int'l Union of Petroleum & Indus. Workers, AFL-CIO*, 870 F.2d at 1450 (citing *Norman v. Young*, 422 F.2d 470, 472-73 (10th Cir.1970)).

City argues that ZyLAB has control over documents in the possession of its corporate parent because ZyLAB "has a close enough relationship with its parent to demonstrate control." (Dkt. No. 41 at 8.) City cites to a district court case to support its position that a subsidiary has control over documents in its parent's possession when the parent acts as an agent for the subsidiary or there is a sufficiently close relationship between the entities. *See St. Jude Med. S.C., Inc. v. Janssen-Counotte*, 305 F.R.D. 630, 639 (D. Or. 2015), *reconsideration denied*, 104 F. Supp. 3d 1150 (D. Or. 2015). In *Janssen-Counotte*, the court held that because the officers of a foreign parent corporation were acting as agents for the subsidiary, the subsidiary had "effective control" over documents in the parent company's possession. *Id*. City argues that ZyLAB BV is an agent of ZyLAB because officers from ZyLAB BV have been involved in negotiations with the City, have previously authored documents to the City, and ZyLAB's counsel receives its client directions from the Netherlands. (Dkt. No. 41 at 11.)

ZyLAB relies on a Ninth Circuit Court of Appeals decision that held that a subsidiary did not have control over documents that its foreign parent had in its possession. *In re Citric Acid Litig.*, 191 F.3d at 1107-08. In that case, the court ruled that a U.S. subsidiary could not force its foreign parent to turn over documents in its possession in the absence of a contract or legal mechanism that provided the subsidiary with a right to the documents. *Id*. That holding was in line with the Ninth Circuit's previous application of the "legal control test" in *Int'l Union of Petroleum & Indus. Workers, AFL-CIO*. 870 F.2d 1450 (holding that international union lacked legal control over documents in the possession of local unions because they were separate entities and the contract governing the union relationship did not expressly give the international the right to obtain the records of local unions upon demand).

The Court is persuaded by the binding Ninth Circuit opinions cited by ZyLAB. Notwithstanding City's argument regarding agency, it has not demonstrated that ZyLAB has a contractual or legal relationship with ZyLAB BV, such that the former can force the latter to turn over documents in its possession. City's citation to non-binding authority is also distinguishable because in the *St. Jude* case it appeared that the only entity with responsive information was the foreign parent. *Janssen-Counotte*, 305 F.R.D. at 638–39. That does not seem to be the case here, as City only specifically references responsive documents related to ZyLAB BV in one of its requests for production. (Dkt. No. 29-1 at 35) (Request for Production No. 12: "Please produce all documents related to the Contract authored by ZyLAB personnel in any ZyLAB location, including but not limited to New York and Virgina, USA; Amsterdam, Holland; and Bracknell, U.K.").

Moreover, ZyLAB has made clear to the City that "to the extent that a ZyLAB BV employee was an officer of ZyLAB and to the extent that documents were in that individual's possession, custody or control in their capacity as a ZyLAB officer, responsive documents would be produced." (Dkt. No. 32 at 12.) Therefore, the Court will not compel ZyLAB to turn over responsive documents that are in the possession of ZyLAB BV. The Court's decision on this

issue does not affect ZyLAB's responsibility to produce responsive documents related to City's other requests for production.

### III. CONCLUSION

For the above reasons, City's motion to compel discovery (Dkt. No. 27) is GRANTED in part and DENIED in part. City's motion to compel is GRANTED as to the following issues:

(1) Within 21 days of the issuance of this order, ZyLAB SHALL produce responsive documents from the period March 4, 2016 to May 5, 2017.

(2) Within 21 days of the issuance of this order, ZyLAB SHALL produce responsive documents to City's Requests for Production Numbers 14, 15, 16, and 17. For those requests for production, ZyLAB does not have to produce responsive documents dated after March 1, 2014. ZyLAB SHALL produce responsive documents to City's Request for Production Number 19 and make specific objections based on privilege, if any.

City's motion is DENIED as to the following issues:

(1) ZyLAB does not have to respond to Request for Production Number 18.

(2) ZyLAB does not have to produce responsive documents that are in the possession, custody, or control of ZyLAB BV.

DATED this 5th day of October, 2017.

John C. Coughenour
UNITED STATES DISTRICT JUDGE